YOLANDA CARDIEL, Plaintiff-Appellee, v. MARVIN WARREN, Defendant (Anne Tesluk, Indiv. and d/b/a The Cycle Inn, *et al.*, Defendants-Appellants).

First District (3rd Division)   No. 1—87—1786

Opinion filed September 29, 1989.—Modified on denial of rehearing December 29, 1989.

Heineke, Burke, Healy & Bodach and Law Offices of Sherwin Green-

berg, both of Chicago (Mary Beth O'Brien, John C. Healy, and Michael F. Burns, of counsel), for appellants.

James T.J. Keating and Elizabeth Davis, both of Chicago, for appellee.

JUSTICE RIZZI delivered the opinion of the court:

Defendant Anne Tesluk, individually and d/b/a The Cycle Inn (Tesluk), appeals from a judgment which was entered in favor of plaintiff, Yolanda Cardiel (Cardiel). Codefendant John Pacocha, as special administrator of the estate of Mary Jaskiewicz (Pacocha), joins Tesluk and appeals from the same judgment. Pacocha argues that the trial court erred in (1) admitting into evidence the answers of Mary Jaskiewicz (Jaskiewicz) that were given in response to written interrogatories and during an oral deposition; (2) denying his motion for a judgment notwithstanding the verdict and (3) denying his motion for a new trial. We reduce the judgment from $15,000 to $300 and affirm the judgment as reduced.

Cardiel, a pedestrian, was injured when struck by an automobile driven by defendant Marvin Warren (Warren). Cardiel brought suit against Warren, Tesluk and Jaskiewicz. The actions against Tesluk and Jaskiewicz were brought pursuant to the Illinois Dramshop Act (Ill. Rev. Stat. 1985, ch. 43, par. 135) and alleged that defendants caused the intoxication of Warren. After the lawsuit was filed, Tesluk's insurance carrier, Kent Insurance Company, was declared insolvent. As a result, the Illinois Insurance Guaranty Fund (the Fund) assumed all responsibility for pending and future litigation and/or claims against persons insured with Kent Insurance Company and undertook the defense of Tesluk in the instant matter.

Warren was an uninsured motorist. Prior to judgment, Cardiel sought and was awarded damages under the uninsured motorist coverage provided by her insurer. Cardiel received $14,700 from her insurer and assigned to them her right of recovery as well as the proceeds of any settlement recovered for bodily injuries. Tesluk made a pretrial motion to dismiss Cardiel's lawsuit pursuant to the "covered claim" and "non-duplication of recovery" provisions of the Illinois guaranty fund act. The trial court denied the motion.

Prior to trial and pursuant to discovery, Jaskiewicz provided answers to written interrogatories. The pertinent questions and answers were as follows:

> "QUESTION: State the full name and last known address of the manager of the dramshop, commonly known as Jasmar Lounge, on April 15th, 1981?

ANSWER: Mary Jaskiewicz.

QUESTION: State the full name and last known address of any and all bartenders on duty and operating the dramshop, commonly known as Jasmar Lounge on April 15th, 1981[.]

ANSWER: Mary Jaskiewicz."

In addition, Jaskiewicz provided the following answers during a pre-trial oral deposition:

"QUESTION: Did you operate the Jasmar Lounge?

ANSWER: Yes, me, only me.

QUESTION: There was no one else who operated it with you?

ANSWER: No.

QUESTION: So when you were at the 2700 Chicago Avenue Jasmar Lounge, you were the only employee, is that right?

ANSWER: Yes."

Jaskiewicz died before trial, and Pacocha, as administrator of her estate, undertook her defense in this matter. At trial, Cardiel moved to admit the above-quoted questions and answers. The trial court allowed the questions and answers to be admitted into evidence over Pacocha's objection.

Warren testified at trial that on April 15, 1981, at approximately 3:30 p.m., he went to the Jasmar Lounge located at 2700 Chicago Avenue, Chicago, Illinois, drank two shots of Seagrams 7 and purchased a half-pint of whiskey to go. Warren further testified that, thereafter, he was involved in an automobile accident on the 4000 block of West Armitage. Cardiel was injured as a result of the accident.

At the close of evidence, a jury found for Cardiel and against defendants Warren, Tesluk and Pacocha in the amount of $31,048.45. The verdict against Tesluk and Pacocha, the two dramshop defendants, was reduced to the total statutory limit of $15,000.

Tesluk filed a post-trial motion requesting that the court rule that pursuant to provisions of the Fund, Cardiel be ordered to satisfy her judgment from defendant Pacocha, who was insured by a solvent carrier, or in the alternative, that the $15,000 verdict against Tesluk be reduced to the amount of $300, the difference between the $15,000 statutory recovery limit of the Dramshop Act and the $14,700 paid to Tesluk by her uninsured motorist carrier. The trial court denied Tesluk's motion. Pacocha filed a post-trial motion for a judgment notwithstanding the verdict and a motion for a new trial. The trial court denied both motions. This appeal followed.

Tesluk argues that the provisions of the Insurance Code which govern the Fund prohibit Cardiel from recovering from the Fund or Tesluk the $14,700 bodily injury payment which has been assigned to Cardiel's uninsured motorist insurance carrier. We agree.

The Fund is a not-for-profit association created by the Illinois legislature to limit the impact on the public, claimants and policyholders, of losses arising out of insurer insolvencies. (Ill. Rev. Stat. 1985, ch. 73, par. 1065.82.) The Fund limits its obligations only to those claims falling within the statutory definition of a "covered claim." The "covered claim" provisions provide in pertinent part:

"(b) 'Covered claim' does not include:

\*\*\*

(ii) any claim for any amount due any \*\*\* insurer \*\*\* as subrogated recoveries or otherwise. No such claim held by a[n] \*\*\* insurer \*\*\* may be asserted in any legal action against a person insured under a policy issued by an insolvent company other than to the extent such claim exceeds the Fund obligation limitations set forth in Section 537.2 of this Code." Ill. Rev. Stat. 1985, ch. 73, par. 1065.84—3.

■ We believe that the wording of the statute makes it clear that the legislature did not want the assets of the Fund depleted to reimburse solvent insurance companies for payments made to claimants or their insureds under policies for which they received a premium. It is also clear that the legislature intended to protect individual insureds of the insolvent company from claims for reimbursement by the solvent insured. Therefore, it would counteract the purposes of the Fund to allow a solvent insurer to be reimbursed by proceeds from the Fund. *Pierre v. Davis* (1987), 165 Ill. App. 3d 759, 761, 520 N.E.2d 743, 744.

■ In the present case, Cardiel's uninsured motorist carrier has been assigned her entire interest in any judgment paid as a result of her successful litigation against Tesluk. Because of this assignment, $14,700 of the $15,000 judgment entered against Tesluk is an amount due an insurer as subrogated recovery. Thus, pursuant to the provisions governing the Fund, that amount is not a "covered claim" and therefore cannot be recovered from the Fund or Tesluk. However, to the extent that the judgment against Tesluk exceeds the amount paid to Cardiel by her uninsured motorist carrier, Cardiel is entitled to recover the excess from Pacocha or the Fund. (*Pierre*, 165 Ill. App. 3d at 761.) Therefore, Cardiel is entitled to collect $300 (which represents the difference between the $15,000 judgment and the $14,700 sum paid by her uninsured motorist carrier) from Pacocha or the

Fund. Therefore, the judgment against Tesluk must be reduced to the amount of $300.

Pacocha initially argues that the trial court erred in admitting into evidence Jaskiewicz's answers taken during pretrial discovery. It is Pacocha's contention that the answers were irrelevant to the issue of whether or not Jaskiewicz served or sold alcohol to Warren. We disagree.

■ The supreme court rules provide that answers given in discovery depositions may be used as admissions made by a party or by an officer or agent of a party in the same manner and to the same extent as any other admission made by that person. (107 Ill. 2d R. 212(a)(2).) The rules also provide that answers to interrogatories may be used in evidence to the same extent as a discovery deposition. (107 Ill. 2d R. 213(f).) Further, when relevant to issues in the case, admissions by a party are admissible as substantive evidence of the truth of the statements made or of the existence of any facts which they have a tendency to establish. *Security Savings & Loan Association v. Commissioner of Savings & Loan Associations* (1979), 77 Ill. App. 3d 606, 610, 396 N.E.2d 320, 323; *Doherty v. Kill* (1986), 140 Ill. App. 3d 158, 162, 488 N.E.2d 629, 632.

■ In the present case, Warren testified that on April 15, 1981, he purchased and consumed liquor at the Jasmar Lounge. Jaskiewicz's answers to pretrial discovery questions revealed that on that date, she was on duty as the manager, bartender and sole employee of the Jasmar Lounge. However, at trial, Pacocha took the position that Jaskiewicz did not serve alcohol to Warren on that date. Under these circumstances, the pretrial discovery admissions were clearly inconsistent with Pacocha's position at trial, and they were relevant to the issue of whether Jaskiewicz served alcohol to Warren. (See *Mortell v. Insurance Co. of North America* (1984), 120 Ill. App. 3d 1016, 1028, 458 N.E.2d 922, 930.) Therefore, the trial court properly allowed the admission of Jaskiewicz's pretrial discovery admissions as substantive evidence. The admissions possessed an independent evidentiary value which tended to establish a material element or issue in the litigation.

Pacocha next argues that the trial court erred in denying his motion for a judgment notwithstanding the verdict. We disagree. A motion for a judgment notwithstanding the verdict should be granted only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors the movant that no contrary verdict based on that evidence could ever stand. *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494,

510, 229 N.E.2d 504, 513-14.

■ In the present case, Pacocha argues that, based on Warren's testimony and the pretrial admissions, it cannot reasonably be inferred that Jaskiewicz gave or sold alcohol to Warren on the date in question. It is Pacocha's position that because Warren failed to specifically state that Jaskiewicz served him liquor, it could reasonably be inferred that someone else sold him the liquor. However, as previously noted, Jaskiewicz was the sole manager, bartender, and employee present in the lounge on the date in question. Under these circumstances, we cannot say that the evidence so overwhelmingly favored Pacocha that no verdict in favor of Cardiel could ever stand. Therefore, we conclude that the trial court did not err in denying Pacocha's motion for a judgment notwithstanding the verdict.

■ Finally, Pacocha argues that the trial court erred in denying his motion for a new trial. We disagree. On a motion for a new trial, a court will weigh the evidence, set aside the verdict, and order a new trial if the verdict is contrary to the manifest weight of evidence. (*West v. City of Hoopeston* (1986), 146 Ill. App. 3d 538, 543, 497 N.E.2d 170, 174.) Here, the verdict is not contrary to the manifest weight of the evidence, since it could reasonably be inferred from the evidence that Jaskiewicz sold liquor to Warren on the date in question. We therefore conclude that the trial court did not err in denying Pacocha's motion for a new trial.

For all of the foregoing reasons, the judgment in favor of Cardiel and against Tesluk is reduced from $15,000 to $300 and the judgment as reduced is affirmed. The judgment in favor of Cardiel and against Pacocha is affirmed in its entirety.

Judgment reduced and affirmed.

FREEMAN, P.J., and WHITE, J., concur.