# ILLINOIS OFFICIAL REPORTS

## Appellate Court

*Skokie Castings, Inc. v. Illinois Insurance Guaranty Fund*, 2012 IL App (1st) 111533

| | |
|---|---|
| Appellate Court Caption | SKOKIE CASTINGS, INC., as Successor to Wells Manufacturing Company, Plaintiff-Appellee, v. ILLINOIS INSURANCE GUARANTY FUND, Defendant-Appellant. |
| District & No. | First District, Third Division<br>Docket No. 1-11-1533 |
| Filed | January 18, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Where plaintiff employer was a self-insurer with respect to workers' compensation insurance and carried excess insurance, and it had exhausted its retention limit at a time when its excess insurer became insolvent, the trial court, in the employer's declaratory judgment action against the Illinois Insurance Guaranty Fund, properly declared that the Fund improperly terminated payments owed to one of plaintiff's employees who had been awarded benefits for life for her total and permanent disability, since the statutory cap did not apply to the Fund's payments in plaintiff's case. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 10-CH-20252; the Hon. Michael B. Hyman, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Locke Lord Bissell & Liddell, LLP, of Chicago (Steven T. Whitmer, Hugh S. Balsam, and Meredith V. Coley, of counsel), for appellant.

Inman & Fitzgibbons, Ltd., of Chicago (Jack M. Shanahan and Lauren E. Zimmer, of counsel), for appellee.

Panel

PRESIDING JUSTICE STEELE delivered the judgment of the court, with opinion.

Justices Murphy and Salone concurred in the judgment and opinion.

## OPINION

¶ 1   Defendant, the Illinois Insurance Guaranty Fund (Fund), appeals an order of the circuit court of Cook County granting summary judgment to plaintiff, Skokie Castings, Inc., as successor to Wells Manufacturing Company (collectively Wells), in a declaratory judgment action. The circuit court ruled that Wells, a self-insuring employer, was entitled to payment from the Fund based on excess workers' compensation policies Wells purchased from Home Insurance Company (Home) before the insurer became insolvent. For the following reasons, we affirm the judgment of the circuit court.

¶ 2                       BACKGROUND

¶ 3   The record on appeal discloses the following facts. In 1985, Wells was an industrial company doing business in Skokie, Illinois. On February 6, 1985, Wells employee Mona Soloky was injured when she sustained a bullet wound to the head while in the course and scope of her employment. Soloky filed a workers' compensation claim against Wells seeking benefits for her injury. On March 10, 1993, the Illinois Industrial Commission found Soloky to be totally and permanently disabled and ordered Wells to pay all reasonable and necessary medical costs, plus weekly benefit payments for life (Soloky award).

¶ 4   At the time of Soloky's injury, Wells was a qualified self-insurer with respect to workers' compensation insurance. However, Wells also purchased an "Aggregate Excess Workers' Compensation and Employers' Liability Policy" and a "Specific Excess Workers' Compensation and Employers' Liability Policy" from Home. The aggregate Home policy provided in part:

"Upon receipt of a monthly or quarterly statement from or on behalf of the insured showing each payment made by the Insured during such period in excess of the Insured's Retention *** the company will promptly reimburse the Insured for such indemnification as the company is obligated to pay under the terms of this policy."

The Home policy at issue provided in part:

"[Home] hereby agrees to indemnify the Insured against excess loss, subject to the limitations, conditions and other terms of this policy, which the Insured may sustain on account of *** compensation and other benefits required of the Insured by the Workers' Compensation Law ***."

Wells paid the Soloky award up to the retention amount stated in the Home policies. Home then paid the award until the insurer went into receivership.

¶ 5 Following the liquidation of Home, the Fund, pursuant to the statute creating the Fund (215 ILCS 5/532 *et seq.* (West 2004)), began paying benefits based on the Soloky award and Soloky's ongoing medical needs. On May 13, 2005, the Fund notified Wells that the $300,000 cap on covered claims under the statute (215 ILCS 5/537.2 (West 2004)) applied and the claim was nearing exhaustion. In approximately August 2005, the Fund ceased paying benefits under the Soloky award. Wells has assumed all payment obligations under the Soloky award since that time.

¶ 6 On May 11, 2010, Wells filed a complaint seeking a judicial declaration that the Fund improperly terminated payments on the Soloky award and the $300,000 cap does not apply to the Fund's obligations regarding the Soloky award. On July 7, 2010, the Fund moved to dismiss the complaint. On October 14, 2010, the circuit court entered an order construing the motion as one seeking summary judgment. On November 12, 2010, Wells filed its response and cross-motion for summary judgment.

¶ 7 On January 20, 2011, the circuit court heard oral argument on the motions and, pursuant to the court's request, the parties filed supplemental briefs addressing the relevance, if any, of the Self-Insurers Advisory Board and Self-Insurers Security Fund (see 820 ILCS 305/4a-5, 4a-7(a) (West 2004)) to the case. On May 5, 2011, the circuit court entered a memorandum opinion and order granting summary judgment in favor of Wells. On May 27, 2011, the Fund filed a timely notice of appeal to this court.

¶ 8                                        DISCUSSION

¶ 9 The issue on appeal is whether the circuit court erred in granting summary judgment to Wells. Summary judgment is appropriate where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2010). The trial court must view these documents and exhibits in the light most favorable to the nonmoving party. *Home Insurance Co. v. Cincinnati Insurance Co.*, 213 Ill. 2d 307, 315 (2004). Our review of a summary judgment ruling is *de novo*. *Arangold Corp. v. Zehnder*, 204 Ill. 2d 142, 146 (2003).

¶ 10 Moreover, in this case, the parties agree the facts are undisputed and the Fund raises statutory interpretation questions on appeal, which are questions of law we review *de novo*. *Hossfeld v. Illinois State Board of Elections*, 238 Ill. 2d 418, 423 (2010). The fundamental rule of statutory construction requires courts to ascertain and give effect to the legislature's intent. *General Motors Corp. v. Pappas*, 242 Ill. 2d 163, 180 (2011). The statutory language, given its plain and ordinary meaning, best indicates the legislature's intent. *Id.* at 180. In interpreting a statutory provision, courts evaluate the statute as a whole, "with each provision

construed in connection with every other section." *Id.* When the statutory language is clear and unambiguous, a court must give effect to the statute's plain meaning without resorting to extrinsic statutory construction aids. *Id.*

¶ 11    We turn to article XXXIV of the Illinois Insurance Code (Code) (215 ILCS 5/532 (West 2004)), which creates the Fund and articulates its purpose:

"The purpose of this Article is to provide a mechanism for the payment of covered claims under certain insurance policies, to avoid excessive delay in payment, to avoid financial loss to claimants or policyholders because of the entry of an Order of Liquidation against an insolvent company, and to provide a Fund to assess the cost of such protection among member companies."

In particular, section 537.2 of the Code (215 ILCS 5/537.2 (West 2004)) provides:

"The Fund shall be obligated to the extent of the covered claims existing prior to the entry of an Order of Liquidation against an insolvent company and arising within 30 days after the entry of such Order, or before the policy expiration date if less than 30 days after the entry of such Order, or before the insured replaces the policy or on request effects cancellation, if he does so within 30 days after the entry of such Order. If the entry of an Order of Liquidation occurs on or after *** January 1, 1988, such obligations shall not: *** exceed $300,000, except that this limitation shall not apply to any workers['] compensation claims ***. In no event shall the Fund be obligated to a policyholder or claimant in an amount in excess of the face amount of the policy from which the claim arises."

The Fund's members include all insurance companies authorized to transact business in Illinois. *Roth v. Illinois Insurance Guaranty Fund*, 366 Ill. App. 3d 787, 795 (2006). All insurers transacting business in Illinois are required to contribute to the Fund in direct proportion to their premium income, and, since all insurers must contribute, " 'it is the philosophy of the Fund to have all potential claims against the Fund's assets reduced by a solvent insurer, and not the Fund, whenever possible.' " *Id.* at 794 (quoting *Harrell v. Reliable Insurance Co.*, 258 Ill. App. 3d 728, 730 (1994)). These contributions " 'are passed along to the insurance-buying public in the form of higher premiums.' " *Id.* (quoting *Norberg v. Centex Homes Corp.*, 247 Ill. App. 3d 267, 274 (1993)). The Fund is to be " 'a source of last resort' " in the event of the insolvency of an insurer. *Id.* at 794-95 (quoting *Illinois Insurance Guaranty Fund v. Farmland Mutual Insurance Co.*, 274 Ill. App. 3d 671, 673 (1995)).

¶ 12    The Fund maintains that Home's obligation to reimburse Wells cannot be considered a "workers' compensation claim" under section 537.2 of the Code. The term is not defined by the Code. In its brief, Wells first argues the term refers only to an "*employee's* claim for benefits under the Workers' Compensation Act." Wells cites *Grabs v. Safeway, Inc.*, 395 Ill. App. 3d 286, 293 (2009), as support for this argument, but the decision–which addresses a claim of retaliatory discharge–does not establish a general definition of the term.

¶ 13    Section 532 of the Code establishes a purpose to prevent loss not only to claimants, but also to policyholders. 215 ILCS 5/532 (West 2004). Section 537.2 of the Code also refers to the Fund's obligations to "a policyholder or claimant." 215 ILCS 5/537.2 (West 2004).

Moreover, section 537.2 of the Code refers to "*any* workers compensation claims." (Emphasis added.) 215 ILCS 5/537.2 (West 2004). The common dictionary definition of "any" encompasses "one or some indiscriminately of whatever kind." Merriam-Webster's Collegiate Dictionary 53 (10th ed. 1998). Accordingly, we conclude that workers' compensation claims under section 537.2 of the Code are not narrowly limited to claims brought by employees, but may extend to claims of policyholders of workers' compensation policies issued by insolvent insurers.

¶ 14    Indeed, the Fund in this case paid on Wells's claim as a policyholder. Moreover, as the circuit court correctly noted in its order, counsel for the Fund conceded at oral argument that if it was a primary insurance policy, the Fund would "pay up to the moon." Thus, the Fund argues in the alternative that Wells's claim against Home as a self-insurer against an excess insurer is not a workers' compensation claim under section 537.2 of the Code. The Fund notes that under the Workers' Compensation Act:

> "In the event the employer does not pay the compensation for which he or she is liable, then an insurance company, association or insurer which may have insured such employer against such liability shall become primarily liable to pay to the employee, his or her personal representative or beneficiary the compensation required by the provisions of this Act to be paid by such employer. The insurance carrier may be made a party to the proceedings in which the employer is a party and an award may be entered jointly against the employer and the insurance carrier." 820 ILCS 305/4(g) (West 2004).

Thus, the Fund argues that a primary workers' compensation insurer is, unlike an excess insurer, directly responsible for paying workers' compensation claims. According to the Fund, where an employer has elected to self-insure under the Workers' Compensation Act (see 820 ILCS 305/4(a)(1), (a)(2) (West 2004)) and its excess insurer becomes insolvent, the employer remains liable for payment of all obligations until it becomes insolvent, at which point the obligation passes to the Self-Insurers Advisory Board (see 820 ILCS 305/4a-1, 4a-6 (West 2004)).

¶ 15    There is no Illinois case law directly addressing the treatment of excess workers' compensation policies under the Code. Reinsurers may not be directly liable to employees for workers' compensation claims. See *People ex rel. Baylor v. Highway Insurance Co.*, 57 Ill. 2d 590, 596-98 (1974). Similarly, article XXXIV of the Code is limited in part to insurance "written on a direct basis." 215 ILCS 5/533 (West 2004). The Fund is statutorily obliged to pay "covered claims," but the statutory definition of "covered claims" excludes:

> "[A]ny claim for any amount due any reinsurer, insurer, insurance pool, or underwriting association as subrogated recoveries, reinsurance recoverables, contribution, indemnification or otherwise. No such claim held by a reinsurer, insurer, insurance pool, or underwriting association may be asserted in any legal action against a person insured under a policy issued by an insolvent company other than to the extent such claim exceeds the Fund obligation limitations set forth in Section 537.2 of this Code." 215 ILCS 5/534.3(b)(v) (West 2004).

The majority of jurisdictions to consider the issue have ruled that a self-insured employer under their state's workers' compensation laws was not an "insurer" for purposes of their

state's guaranty laws, and thus, self-insured employers could recover from their state's guaranty funds after their excess insurers became insolvent. See *MGM Mirage v. Nevada Insurance Guaranty Ass'n*, 209 P.3d 766, 772 (Nev. 2009) (and cases cited therein). The Fund relies primarily on *In re Claim of National Fire Insurance Co. of Pittsburgh*, No. A-3876-0672, 2008 WL 516290 (N.J. Super. Ct. App. Div. Feb. 28, 2008) (*per curiam*), but as the circuit court noted: (a) it is an unreported case not binding on any court (N.J. Ct. R. 1:36-3 (eff. Sept. 1, 1994)); and (b) the applicable New Jersey statute expressly provides that excess insurance purchased by self-insuring employers is excluded (N.J. Stat. Ann. § 34:15-77 (West 2008)). However, even the weight of authority is more persuasive on the issues of whether the Home polices were "written on a direct basis" and whether the claim here is a "covered claim" under the Code than whether the claim is specifically a workers' compensation claim.

¶ 16    The circuit court relied on *In re Delinquency Proceedings Against Mission Insurance Co.*, 816 P.2d 502, 506 (N.M. 1991), in which the New Mexico Supreme Court found that a self-insurer's excess workers' compensation policies are not excepted from coverage under that state's guaranty law. The circuit court noted the New Mexico law, like the Illinois law, limited the amount that could be paid on covered claims, "except that the association shall pay the full amount of any covered claim arising under a workmen's compensation policy." N.M. Stat. Ann. § 59A-43-4(C) (1978). The New Mexico Supreme Court reasoned that although the unlimited coverage of the state's guaranty law was meant to protect injured workers, it does not follow that the self-insured employer's excess policies fell outside the coverage of that law, where excess workers' compensation policies are not excepted from coverage or defined as beyond the scope of the guaranty law. *Mission Insurance Co.*, 816 P.2d at 506.

¶ 17    Like the circuit court, we find *Mission Insurance Co.* is persuasive authority on this issue. The Code demonstrates that our legislature understood how to exclude various contracts of reinsurance or indemnity from the scope of the Fund's obligations. See 215 ILCS 5/534.3(b)(v) (West 2004). Had our legislature sought to exclude or limit the Fund's obligation regarding excess workers' compensation policies purchased by self-insuring employers, it could have expressly done so, as was done in New Jersey. Compare N.J. Stat. Ann. 34:15-77 (West 2008). The weight of authority interpreting similar guaranty laws in other states–as well as the Fund's own behavior in this case–persuades us that this is not a case of reinsurance to be treated differently as the Fund suggests. Although the provisions of the Workers' Compensation Act establishing the Self-Insurers Advisory Board address the situation where both a self-insuring employer and the excess insurer (if any) become insolvent, they do not address the Fund's obligation to a solvent employer whose insurer becomes insolvent. The Fund conceded it would have an unlimited obligation to a solvent employer carrying primary insurance and offers no persuasive reason for a different result where a solvent self-insurer carries excess insurance and exhausts the retention limit. Our legislature, in adopting the Code, expressly chose not to limit the Fund's obligation regarding "*any* workers compensation claims." (Emphasis added.) 215 ILCS 5/537.2 (West 2004).

¶ 18                              CONCLUSION

¶ 19       Thus, we conclude the circuit court did not err in granting summary judgment to Wells and declaring: (1) the Fund improperly terminated payments owed on the Soloky award; (2) the statutory cap does not apply to the Fund's payments in this case; (3) the Fund is liable for all benefits paid to Soloky by Wells since Home went into liquidation; (4) the Fund owes reimbursement to Wells for payments made to Soloky since the Fund terminated payments in 2005; and (5) the Fund continues to owe payments for benefits pursuant to the Soloky award. Accordingly, the judgment of the circuit court of Cook County is affirmed.

¶ 20       Affirmed.