Edmund A. SULKOWSKI, Appellant,

v.

PENNSYLVANIA PROPERTY AND
CASUALTY INSURANCE GUAR-
ANTY ASSOCIATION, Appellee.

Superior Court of Pennsylvania.

Argued June 9, 2004.
Filed March 16, 2005.

Jason Tetlow, Pittsburgh, for appellant.

Lise Luborsky, Philadelphia, for appellee.

BEFORE: FORD ELLIOTT, TODD, and PANELLA, JJ.

OPINION BY PANELLA, J.:

¶ 1 Appellant, Edmund A. Sulkowski, appeals from the order entered on December 18, 2003, by the Honorable Max Baer,[1] Court of Common Pleas of Allegheny County, which granted summary judgment in favor of Appellee, Pennsylvania Property and Casualty Insurance Guaranty Association ("PPCIGA"). As a result of the judgment, PPCIGA retained $122,684.00, the amount it had previously offset against disability insurance payments made to Appellant, from a settlement reached by Appellant in his underlying medical malpractice action. This timely appeal followed, in

---

**1.** Justice Baer now sits on the Supreme Court of Pennsylvania.

which Appellant argues that the trial court erred in holding that monies recovered by Appellant from his disability insurance carrier constituted a permissible offset under the Pennsylvania Property and Casualty Insurance Guaranty Association Act.[2] Appellant's Brief, at 3. After careful review, we affirm.

¶ 2 On February 21, 1996, Appellant was admitted to Washington Hospital where he underwent a diagnostic laparoscopic procedure, performed by Allen Merzi, M.D. During the procedure, Appellant sustained an injury to his small bowel, and consequently he suffered post-operative complications. Ultimately, Appellant was forced to undergo corrective surgeries to repair his small bowel. Thereafter, Appellant commenced a medical malpractice action against Dr. Merzi and Washington Hospital seeking to recover damages, which included claims for medical expenses and lost wages.[3]

¶ 3 Appellant's health insurance paid claims totaling $77,316.71, which represented compensation for medical expenses incurred as a result of the professional negligence of Dr. Merzi. Further, by the time the trial in the medical malpractice action commenced, Appellant's disability insurance carrier had paid him approximately $122,684.00 in lost wages stemming from the same claim.

¶ 4 At the time of the laparoscopic procedure, Dr. Merzi was insured by PIC Insurance Group, Inc. ("PIC") and had a policy limit of $200,000.00. The Pennsylvania Medical Professional Liability Catastrophe Fund (the "CAT fund") provided Dr. Merzi with $1,000,000.00 in excess coverage.[4]

¶ 5 On January 21, 1998, the Commonwealth Court of Pennsylvania ordered PIC into liquidation due to its insolvency,[5] see Panea v. Isdaner, 773 A.2d 782, 786 (Pa.Super.2001) (en banc), aff'd sub nom. Bell v. Slezak, 571 Pa. 333, 812 A.2d 566 (2002), and by operation of law PPCIGA stepped in as the successor to PIC. See id. (citing 40 PA.STAT. § 991.1803). Thereafter, PPCIGA tendered the $200,000.00 PIC policy limit to the CAT fund,[6] but offset, pursuant to 40 PA.STAT. § 991.1817(a), the $77,316.71 Appellant received from his health insurance as well as the $112,684.00 he received from his disability insurer.

¶ 6 Subsequent thereto, the parties settled the medical malpractice action and executed a release on July 2, 2001. In the release, Appellant relinquished all claims and damages against the parties to the medical malpractice action, reserving only the right to recover the $112,684.00 amount offset by PPCIGA. As a result,

2. 40 PA.STAT. §§ 991.1801–991.1820.

3. Specifically, Appellant claimed that he was totally disabled and sustained lost wages in excess of $1,000,000.00. Appellant is a dentist and has not worked since the date of his injury, i.e., February 21, 1996.

4. The Health Care Services Malpractice Act, 40 PA.STAT. §§ 1301.101—1301.1006 (superseded), applicable at the time of the instant litigation, created the Medical Professional Liability Catastrophe Loss Fund, whose purpose was to pay "settlements ... against a health care provider ... to the extent such health care provider's share exceeds basic coverage in effect at the time of occurrence." 40 PA. STAT. § 1301.701(d) (superseded). This statute was repealed effective October 1, 2002 and replaced by 40 PA.STAT. § 1303.714 (part of the Medical Care Availability and Reduction of Error Act, 40 PA.STAT. §§ 1303.101— 1303.910).

5. M. Diane Koken v. PIC Insurance Group, Inc., 44 M.D.1998 (Pa. Commw. filed 1/21/98.).

6. The CAT fund apparently complied with its settlement obligations to Appellant and is not subject to this litigation.

on September 10, 2001, Appellant filed the instant declaratory judgment action seeking a resolution of whether PPCIGA is entitled to an offset of $112,684.00, the amount paid by Appellant's disability insurer. Following motions for summary judgment filed by both parties, the trial court granted PPCIGA's motion as it ruled that PPCIGA was statutorily entitled to an offset of the amount paid by Appellant's disability insurer.

¶ 7 Preliminarily, we note that "summary judgment may be granted only in those cases in which the record clearly shows that there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Capek v. Devito,* 564 Pa. 267, 270 n. 1, 767 A.2d 1047, 1048 n. 1 (2001). Our standard of review is well-settled: we may reverse a grant of summary judgment only for an abuse of discretion or error of law. *See McCarthy v. Dan Lepore & Sons Co., Inc.,* 724 A.2d 938, 941 (Pa.Super.1998), *appeal denied* 560 Pa. 707, 743 A.2d 921 (1999). Our scope of review is *plenary* as the present appeal presents a question of law in the review of a grant of summary judgment, *see Long v. Ostroff,* 854 A.2d 524, 527 (Pa.Super.2004), and involves the trial court's construction of a statute. *See Caruso ex rel. Caruso v. Medical Professional Liability Catastrophe Loss Fund,* 858 A.2d 620, 623 (Pa.Super.2004).

¶ 8 The Pennsylvania Property and Casualty Insurance Guaranty Act (the "Act"), 40 PA.STAT. §§ 991.1801–991.1820, mandates that every insurer doing business in the Commonwealth of Pennsylvania participate in PPCIGA as a condition of its authority to write property and casualty insurance policies in the Commonwealth. *See* 40 PA.STAT. § 991.1803(a). In accordance with the requirements of the Act, PPCIGA pays covered claims of insolvent insurers up to the amount of the policy limits of the insolvent insurer. *See* 40 PA.STAT. § 991.1803(b). Thus, PPCIGA enables the payment of covered claims under certain property and casualty insurance policies and avoids financial loss to claimants or policyholders due to an insurer's insolvency. *See* 40 PA.STAT. § 991.1801(1). The Act, however, does contain limitations as to when PPCIGA is required to pay certain claims against insolvent insurers. *See Strickler v. Desai,* 571 Pa. 621, 628, 813 A.2d 650, 654 (2002) (*plurality*).

¶ 9 One such statutory limitation, which is at issue in this case, is the "Non-duplication of recovery provision," which provides as follows:

> Any person having a claim under an insurance policy shall be required to exhaust first his right under such policy. For purposes of this section, a claim under an insurance policy shall include a claim under any kind of insurance, whether it is a first-party or third-party claim, and shall include, without limitation, accident and health insurance, worker's compensation, Blue Cross and Blue Shield and all other coverages except for policies of an insolvent insurer. Any amount payable on a covered claim under this act shall be reduced by the amount of any recovery under other insurance.

40 PA.STAT. § 991.1817(a).

¶ 10 Here, we are faced with a case of first impression where we are called upon to determine whether disability insurance falls within the purview of section 991.1817(a). If we find that it does, we must next determine whether PPCIGA is entitled to an offset for the payments made to Appellant by his disability insurer.

¶ 11 We begin our discussion by noting that the reference to insurances contemplated within the act is very broad. For

example, in *McCarthy v. Bainbridge*, 739 A.2d 200 (Pa.Super.1999), *aff'd* 565 Pa. 464, 774 A.2d 1246 (2001), our Court, through the opinion of our distinguished colleague Judge Phyllis W. Beck, concluded that life insurance, although not specifically mentioned in section 991.1817(a), nonetheless came within the purview of the non-duplication of recovery provision.[7] We also note that health insurance is specifically mentioned in section 991.1817(a) as a type of insurance that a covered claim "shall be reduced by." 40 PA.STAT. § 991.1817(a). Health insurance is an example of a first-party policy which provides for "medical expenses resulting from sickness or injury." BLACK'S LAW DICTIONARY 817 (8th ed.2004). Furthermore, our Supreme Court has held that PPCIGA may offset its liability arising from its role as a guarantor of PIC in a medical malpractice action against prior payments made by health insurers. *See Bell v. Slezak*, 571 Pa. 333, 346, 812 A.2d 566, 574 (2002). *See also, Strickler*, 571 Pa. at 628–629, 813 A.2d at 654 (finding that the non-duplication of recovery provision of the Act entitles PPCIGA to offset its statutory obligation by the amount of health care benefits previously received by appellants from health care provider).

¶ 12 After review, we find disability insurance to be similar to health insurance in this regard; it is available for first-party insurance coverage and protects "a person from a loss of income during a period incapacity [sic] for work." BLACK'S LAW DICTIONARY 816 (8th ed.2004). We find, based on the expansive language of section 991.1817(a) and on the similarities of coverage provided by disability and health insurance, no meaningful distinction between these two types of insurance which

would lead to the exclusion of disability insurance under the non-duplication of recovery provision. Accordingly, we hold that PPCIGA may offset its liability arising from its role as a guarantor of PIC in a medical malpractice action against prior payments made by a disability insurer.

¶ 13 As noted, however, this finding does not end our inquiry. This Court recently explained that for a claim to be offset by section 991.1817(a) " 'the claim to be offset must be for the same loss as the claim asserted against the insolvent insurer.' " *Carrozza v. Greenbaum*, 866 A.2d 369, 389 (Pa.Super.2004) (quoting *Brostoski v. Lucchino*, 835 A.2d 751, 753 (Pa.Super.2003)). *Compare Brostoski*, (PPCIGA not entitled to offset settlement amount it was obligated to pay by the amount paid by plaintiff's health insurance where claim for medical expenses had been withdrawn and the settlement was for pain and suffering), *with Strickler* (PPCIGA entitled to offset by the amount paid by plaintiff's health insurance where plaintiff's claim for medical expenses was included in the settlement agreement), *and Price v. Pennsylvania Property and Guaranty Association*, 795 A.2d 407, 411 (Pa.Super.2002), *appeal denied* 573 Pa. 698, 825 A.2d 1262 (2003) (PPCIGA entitled to offset where complaint sought medical expenses, health insurer paid medical expenses, and settlement included medical expenses).

¶ 14 In this case, the claim PPCIGA seeks to offset is for the same loss as the claim asserted against the insolvent insurer. Appellant pled and claimed lost wages in the underlying medical malpractice action. *See* Stipulation of Facts, 7/22/02, at ¶ 5. There is no indication in the certified record that Appellant withdrew his claim for lost wages. Moreover, Appellant's dis-

---

**7.** In *McCarthy,* we concluded that PPCIGA was not entitled to an offset, under the circumstances of that case, because the claim to be offset, which was paid by life insurance, was not for the same loss as the claim asserted against PIC. *See Id.,* 739 A.2d at 203–204.

ability insurer paid his lost wages totaling in excess of $122,684.00. *See id.,* at ¶ 8. Lastly, Appellant settled all claims and damages in the resolution with the defendants to the medical malpractice action. *See id.,* at ¶ 18. Thus, according to the case law, PPCIGA is entitled to an offset. *See, e.g., Price.*

¶ 15 To hold otherwise would run afoul of the prior decisions of the Pennsylvania Supreme Court, as well as this Court. Our Supreme Court has previously noted that "a purpose of the fund is to provide a source of recovery of covered claims when an insurer becomes insolvent, the fund should be reserved to pay insureds of insolvent insurers **who have not recovered the same damages from another source.**" *Strickler,* 571 Pa. at 632, 813 A.2d at 656 (emphasis added).

¶ 16 Judgment affirmed.