FIRST DIVISION
June 19, 2006

No. 1-05-0025

| THOMAS W. ROTH, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | |
| | ) | |
| ILLINOIS INSURANCE GUARANTY FUND, | ) | Honorable |
| | ) | Dorothy Kirie Kinnaird, |
| Defendant-Appellee. | ) | Judge Presiding. |

JUSTICE BURKE delivered the opinion of the court:

Plaintiff Thomas Roth appeals from an order of the circuit court granting summary judgment in favor of defendant Illinois Insurance Guaranty Fund (the Fund) on plaintiff's complaint for declaratory judgment against the Fund, arising from the Fund's denial of plaintiff's claim for payment of the policy limits of an insurance policy issued to the driver of a vehicle who injured plaintiff by an insurer that subsequently became insolvent. On appeal, plaintiff contends that the trial court erred in granting the Fund summary judgment because: (1) payments to him under a medical insurance plan or policy and/or payments under his disability plan or policy should not, pursuant to section 546(a) of the Illinois Insurance Guaranty Fund Act (Act) (215 ILCS 5/546(a) (West 2004)), reduce the obligation of the Fund under section 537.2 of the Act (215 ILCS 5/537.2 (West 2004)); and (2) the "covered

claim" definition in section 534.3(b)(v) of the Act (215 ILCS 5/534.3(b)(v) (West 2004)) does not exclude negotiated lien claims of plaintiff's medical insurers against the Fund.  For the reasons set forth below, we affirm.

STATEMENT OF FACTS

On June 7, 1998, plaintiff was injured when he was struck by a car being driven by Jamilla Bryant at or near 4025 West Marquette Road in Chicago, Illinois.  Bryant was insured under an automobile liability insurance policy issued by Valor Insurance (Valor), with a liability limit of $20,000.  Plaintiff filed a complaint against Bryant and, in November 2001, settled the case for Valor's policy limits of $20,000.  Plaintiff was also insured by HMO Illinois and Chicago Partners, Inc./Meyer Medical Group (plaintiff's medical insurers), who ultimately paid plaintiff $128,067.82 in medical benefits, and Liberty Mutual Insurance Company (plaintiff's disability insurer), who paid him $7,259.02 in long-term disability benefits, for his June 7 injuries.

Prior to plaintiff receiving the $20,000 settlement funds, Valor became insolvent and an order of liquidation was entered against it.  Thereafter, plaintiff submitted a claim to the Fund, a nonprofit entity created by article 34 of the Illinois Insurance Code (Insurance Code) (215 ILCS 5/535 (West 2004)) for the $20,000 limits of Bryant's policy with Valor.  The Fund denied plaintiff's claim pursuant to section 546(a) of the Act, maintaining that plaintiff was required to set off any amount received from his

2

medical and disability insurers from his $20,000 claim against the Fund. On January 26, 2004, plaintiff filed a complaint against the Fund, seeking a declaration that the Fund violated section 537.4 of the Act by refusing to pay plaintiff's claim equal to Valor's applicable policy limits of $20,000.

The Fund filed an answer to plaintiff's complaint. As affirmative defenses, the Fund alleged that: (1) pursuant to section 546(a) of the Act, the Fund's obligation is reduced by any amount recovered or recoverable from an "other insurer" and, since plaintiff had recovered in excess of the $20,000 policy limits of the Valor policy, the amount recoverable from the Fund was zero; and (2) pursuant to section 534.3 of the Act, which pertains to what is and is not a "covered claim," "plaintiff's medical insurer's [*sic*] claim for reimbursement of those medical insurance benefits, by way of subrogation or otherwise, is not included within the definition of covered claims payable by the [Fund]."

In reply to the Fund's affirmative defenses, plaintiff denied that he had " 'recovered' in excess of $20,000 from said insurers within the meaning of [section 546(a) of the Act]" or "that the obligation of the [Fund] is reduced by any sums paid by Plaintiff's medical insurance carrier or plan." Plaintiff further stated that his "insurers and medical plans are limited to $6,917.35" (representing the negotiated liens of his medical insurers); denied "that said insurers/medical plans have claims by way of subrogation"; and denied that section 534.3 is applicable to the

3

purported reimbursement claims of his medical insurers.

The Fund filed a motion for summary judgment on September 27, 2004. In its motion, the Fund argued that, pursuant to section 546(a) of the Act, it was "entitled to set-off the $128,067.82 in medical insurance payments made to or on behalf of the plaintiff by [plaintiff's] two solvent medical insurers *** and the $7,259.01 in disability payments made to plaintiff by [his] solvent disability insurer" because they were in excess of Valor's $20,000 policy limits and because plaintiff's claim arose from the same injuries as his claim against the Fund. The Fund also made the same subrogation/lien argument as to the nonapplicability of section 534.3(b)(v) of the Act.

On October 26, 2004, plaintiff filed a cross-motion for summary judgment and response to the Fund's motion for summary judgment, arguing that, while section 546(a) provides that the Fund's obligation is to be reduced by the amount *recovered* or *recoverable* under other insurance policies, he did not receive any *recovery* within the meaning of this section. Plaintiff defined "recovery" as being obtained by a judicial action or proceeding. Plaintiff also asserted that the medical expenses and disability benefits he had received were "not the kind of payments which have historically been interpreted as offsets to claims against the Guaranty Fund." Plaintiff also again argued that the liens of his two medical insurers were not excluded by the "covered claim" definition of section 534.3(b)(v), and, with respect to Liberty's

4

payment of $7,259.01 for long-term disability, Liberty would not be entitled to reimbursement from plaintiff's settlement and, therefore, the Fund would not be entitled to a setoff of that amount under section 534.3(b)(v). Plaintiff concluded that he was entitled to the same benefit that he would have received under the negotiated $20,000 settlement had Valor not become insolvent.

On November 16, 2004, the Fund filed its reply to plaintiff's response to its motion for summary judgment and to plaintiff's cross-motion for summary judgment, making arguments similar to those in its motion for summary judgment. The Fund further argued that plaintiff's assertion that the other insurance benefits paid to plaintiff did not constitute "recovered" insurance amounts under section 546(a) was "senseless," since that section contains no requirement that the other insurance must have been recovered in a judicial proceeding. The Fund also argued that the legislature amended section 546(a) in 1997 "to expressly cover all other insurance recoveries 'arising from the same facts, injury, or loss that gave rise to the covered claim against the Fund.' " According to the Fund, the addition of language in section 546(a) that stated, " 'whether or not such other insurance policy was written by a member company,' " made it clear that medical insurance payments were required to be set off. In support thereof, the Fund relied on *MacDougall v. Hartford Insurance Group,* No. 197637, (Va. Cir. Ct. February 20, 2003), as an analagous case to the facts of the case at bar with a statutory provision similar to Illinois'

section 546(a), in which the Virginia court agreed with the defendant Virginia Property and Casualty Insurance Guaranty Association "that health insurance benefits actually paid are an offset from covered claims." *MacDougall,* slip op. at 7-8. Accordingly, the Fund argued, since section 546(a) "expressly applies to the insured's recovery of a claim under any other insurance policy as long as that claim 'arises from the same facts, injury or loss that gave rise to the covered claim against the Fund,' " and plaintiff's recovery of $128,067.82 from his medical insurers and $7,259.01 from his disability insurer "were undeniably claims arising from 'the same injury' that gave rise to plaintiff's covered claim against the Fund, the Fund's $20,000 obligation must be reduced by those other insurance payments."

In plaintiff's reply in support of his cross-motion for summary judgment, plaintiff argued that the Fund's interpretation of what constituted "other insurance" went against "the statutory intent of placing the injured party in the same position as he would have been had the tortfeasor's insurer remained solvent." Plaintiff also maintained that the Virginia court's construction of a statute similar to Illinois' section 546(a) was not binding on Illinois courts. In conclusion, plaintiff requested that the trial court declare that the Fund was not entitled to set off the $128,067.82 paid to him by his medical insurers and $7,259.02 received by him as disability benefits and that the Fund was obligated to pay plaintiff the $20,000 limits of Bryant's Valor

policy. In the alternative, plaintiff requested that the trial court declare that the Fund was obligated to pay plaintiff the $20,000 limits of Bryant's Valor policy, less the negotiated liens of plaintiff's medical insurers, in the amount of $6,917.35, and declare the liens null and void as subrogated interests against the Fund.

On November 30, 2004, the trial court held a hearing on the parties' motions. The parties presented similar arguments to those contained in their pleadings. The court granted the Fund's motion for summary judgment and denied plaintiff's cross-motion, stating that no genuine issue of material fact existed and that the Fund "is entitled to set-off the $128,067.82 in medical insurance paid by HMO Illinois and Chicago Partners/Meyer Medical Group to or on behalf of plaintiff, and therefore the defendant Fund has no obligation to pay plaintiff the $20,000 limit of the policy of the insolvent insurer, Valor Insurance Company." This appeal followed.

ANALYSIS

This court reviews the granting of a summary judgment motion *de novo*. *Mack v. Ford Motor Co.,* 283 Ill. App. 3d 52, 56, 669 N.E.2d 608 (1996). "Summary judgment is appropriate when there is no genuine issue of material fact and the moving party's right to judgment is clear and free from doubt." *Espinoza v. Elgin, Joliet & Eastern Ry. Co.,* 165 Ill. 2d 107, 113, 649 N.E.2d 1323 (1995). The granting of summary judgment is a drastic method of disposing of a case and should not be employed unless the right of the moving

party is free from doubt.  *Murphy v. Urso,* 88 Ill. 2d 444, 464, 430 N.E.2d 1079 (1981).

On appeal, plaintiff contends that payments under a medical insurance plan or policy and/or payments under a disability plan or policy should not, pursuant to section 546(a) of the Act (215 ILCS 5/546(a) (West 2004)), reduce the Fund's obligation under section 537.2 of the Act (215 ILCS 5/537.2 (West 2004)).  Plaintiff maintains that the Act's purpose is to place a claimant in the same position that he would have occupied if the defendant's liability insurer had remained solvent.  Plaintiff further states that section 546, "formerly known as the 'Non-Duplication of Recovery' section," requires only that a claimant first exhaust any available coverage applicable to the "same claim," *e.g.,* coverage under a liability policy issued by a solvent insurer where the policy issued by an insolvent insurer was for liability coverage, rather than a solvent health insurer and an insolvent automobile liability insurer, as here.  Plaintiff maintains that if health insurance benefits were determined to reduce the Fund's obligation, the effect would be to penalize "the proverbial ant and reward the grasshopper," as would, hypothetically, setoffs for Medicare and Medicaid, medical benefits under a company funded medical plan, disability insurance payments, and long-term disability benefits, which reduce a claimant's retirement benefits.  Plaintiff maintains that such a result would be harsh and unfair and that the legislature could not have intended same.

8

Plaintiff lastly argues that further evidence of the legislature's intention regarding the setoff provision of section 546 is the fact that the section speaks of amounts "recovered or recoverable" under other insurance. Plaintiff interprets this to mean such amounts be recovered or recoverable as a result of judicial action or by cause of law. According to plaintiff, if the legislature had intended otherwise, it could have included medical or disability benefits under section 546 of the Act as a reduction, as well as that the Fund's obligation be reduced by the amount "paid or payable" under such other insurance.

The Fund counters that the trial court applied section 546(a) of the Act exactly as the language and intent of the statute required and that the "other insurance" setoff is not harsh or unfair to persons who purchase medical insurance. The Fund maintains that the Illinois legislature created the Fund to provide a minimal amount of insurance from some source to claimants and insureds when insurers become insolvent; the Fund is "not insurance" and it does not undertake all the obligations of an insolvent insurer for all purposes, nor is the Fund's liability on a "covered claim" coextensive with the obligations of an insolvent insurer's obligations to its insured under its policy. The Fund further maintains the provisions of the Act were enacted to insure that the Fund is a recovery of "last resort" by requiring that a claimant seek to cover his loss first with funds available from other insurers. The Fund also maintains, contrary to plaintiff's

contention that the legislature's purpose was to place a claimant in the same position that he would have occupied if his liability insurer had remained solvent, that Illinois courts have repeatedly recognized that the Fund and the Act "do not always make the insured or the claimant whole or avoid a loss."

The Fund further contends that the language of section 546(a) of the Act makes clear that a claimant must exhaust all coverage provided by any insurance company where the insurance claim arises "from the same facts, injury or loss" that gave rise to the claim against the Fund, and that the amount recovered or recoverable therefrom must be set off from the Fund's obligation. Accordingly, the Fund argues that the trial court properly determined that the payments made to plaintiff by his medical insurers in the amount of $128,067.82 were a proper setoff from the Fund's liability to plaintiff.

The interpretation of a statute is reviewed *de novo*. *Kroke v. City of Bloomington*, 204 Ill. 2d 392, 395, 789 N.E.2d 1211 (2003). The primary goal when construing a statute is to determine and give effect to the intent of the legislature. *Illinois Health Maintenance Organization Guaranty Ass'n v. Shapu,* 357 Ill. App. 3d 122, 149, 826 N.E.2d 1135 (2005). The most reliable indicator of the legislature's intent in enacting a particular law is the language of the statute. *Seasons-4, Inc. v. Hertz Corp.,* 338 Ill. App. 3d 565, 571, 788 N.E.2d 179 (2003). Statutory language must be given its plain and ordinary meaning, and when the language is

clear and unambiguous, we must apply the statute without resorting to additional aids of statutory construction. *Seasons-4, Inc.,* 338 Ill. App. 3d at 571; *Allen v. Lin*, 356 Ill. App. 3d 405, 411, 826 N.E.2d 1064 (2005); *Cargill v. Czelatdko*, 353 Ill. App. 3d 654, 658, 818 N.E.2d 898 (2004). In construing a statute, the reason and necessity for the statute and the evils it was intended to remedy may be considered. *Shapu,* 357 Ill. App. 3d at 149; *Allen*, 356 Ill. App. 3d at 411. When construing a provision of a statute, no phrase or word is to be rendered meaningless or superfluous. *Compton v. Ubilluz,* 351 Ill. App. 3d 223, 229, 811 N.E.2d 1225 (2004). " 'Where statutes are enacted after judicial opinions are published, it must be presumed that the legislature acted with knowledge of the prevailing case law.' " *Cargill*, 353 Ill. App. 3d at 658, quoting *People v. Hickman*, 163 Ill. 2d 250, 262, 644 N.E.2d 1147 (1994).

The Fund was established by the Insurance Code and created to protect policyholders of insolvent insurers and third parties who make claims under policies issued by insurers that become insolvent. *IPF Recovery Co. v. Illinois Insurance Guaranty Fund*, 356 Ill. App. 3d 658, 663, 826 N.E.2d 943 (2005). The Fund's members include all insurance companies authorized to transact business in Illinois. *IPF Recovery Co.,* 356 Ill. App. 3d at 663. All insurers transacting business in Illinois are required to contribute to the Fund in direct proportion to their premium income, and, since all insurers must contribute, " 'it is the

philosophy of the Fund to have all potential claims against the Fund's assets reduced by a solvent insurer, and not the Fund, whenever possible.' " *Harrell v. Reliable Insurance Co.*, 258 Ill. App. 3d 728, 730, 631 N.E.2d 296 (1994), quoting *Pierre v. Davis*, 165 Ill. App. 3d 759, 760, 520 N.E.2d 743 (1987); *Norberg v. Centex Homes Corp.,* 247 Ill. App. 3d 267, 275, 616 N.E.2d 1342 (1993). These contributions "are passed along to the insurance-buying public in the form of higher premiums." *Norberg,* 247 Ill. App. 3d at 274. The legislative intent in establishing the Fund as set out in the Act was to create

> "a mechanism for the payment of covered claims under certain insurance policies, to avoid excessive delay in payment, to avoid financial loss to claimants or policyholders because of the entry of an Order of Liquidation against an insolvent company, and to provide a Fund to assess the cost of such protection among member companies." *Illinois Insurance Guaranty Fund v. Farmland Mutual Insurance Co.*, 274 Ill. App. 3d 671, 674, 653 N.E.2d 856 (1995).

Under the the Act, the Fund is to be "a source of last resort" in the event of the insolvency of an insurer. *Farmland Mutual Insurance Co.*, 274 Ill. App. 3d at 673; *Urban v. Loham*, 227 Ill. App. 3d 772, 776, 592 N.E.2d 292 (1992).

12

The Fund's liability, however, is subject to the limitations of the Act, which include, *inter alia*, that the claim must be a "covered claim" (215 ILCS 5/534.3 (West 2004)), the liability of the Fund is to be reduced by "other insurance" before a claimant or insured can recover from the Fund (215 ILCS 5/546 (2004)), and the Fund's liability on any claim shall not exceed $300,000, except as to workers compensation claims or certain unearned premiums (215 ILCS 5/537.2 (West 2004)). The Fund is entitled to set off the full limits of a policy's coverage of an insolvent insurer even though said limits were not recovered in a judicial proceeding, but rather through a settlement. *Hasemann v. White*, 177 Ill. 2d 414, 420-21, 686 N.E.2d 571 (1997). Section 534.3 of the Act, defining "covered claim," states:

> "(a) 'Covered claim' means an unpaid claim for a loss arising out of and within the coverage of an insurance policy to which this Article applies and which is in force at the time of the occurrence giving rise to the unpaid claim, *** made by a person insured under such policy or by a person suffering injury or damage for which a person insured under such policy is legally liable ***[;]
>
> (b) 'Covered claim' does not include:
>
> ***
>
> (v) any claim for any amount due any

> reinsurer, insurer \*\*\* as subrogated recoveries, reinsurance recoverables, contribution, indemnification or otherwise. No such claim held by a reinsurer, insurer, \*\*\* may be asserted in any legal action against a person insured under a policy issued by an insolvent company other than to the extent such claim exceeds the Fund's obligation limitations set forth in Section 537.2 of this Code." 215 ILCS 5/534.3(a), (b)(v) (West 2004).

Section 546(a), currently entitled "Other insurance," requires a claimant to first exhaust all coverage provided by any other insurance policy before he can recover from the Fund due to the insolvency of an insurer. 215 ILCS 5/546(a) (West 2004).

Prior to its amendment in 1997, section 546(a) of the Act was referred to as the nonduplication of recovery provision, and stated:

> "Any insured or claimant having a covered claim against the Fund shall be required first to exhaust his rights under any provision in any other insurance policy which may be *applicable to the claim*. Any amount payable

14

> on a covered claim under this Article shall be reduced by the amount of such recovery under such insurance policy." (Emphasis added.)
>
> 215 ILCS 5/546(a) (West 1994).

This section was interpreted in *Bukema v. Yomac, Inc.*, 284 Ill. App. 3d 790, 672 N.E.2d 755 (1996). *Bukema* involved a lawsuit filed by the plaintiff against the defendant on the grounds of negligence and liability under the Dram Shop Act. The defendant was the owner of a tavern where the plaintiff was injured by a patron. The defendant was insured under two insurance policies, a general liability policy issued by Travelers Insurance Co. (Travelers), which excluded coverage for any liability incurred in connection with the distribution of alcohol, and a separate dram shop policy issued by State Security Insurance Co. (State Security), which only covered liability arising from the distribution of alcoholic beverages. *Bukema*, 284 Ill. App. 3d at 791.

State Security subsequently became insolvent. The plaintiff settled its negligence claims with Travelers, the defendant's solvent insurer. The Fund, which assumed the obligation of the dram shop insolvent insurer State Security, moved to dismiss the plaintiff's dram shop claim based on section 546(a). *Bukema*, 284 Ill. App. 3d at 791-92. The trial court granted the Fund's motion, finding: a "claim" meant "injury," and therefore section 546(a) was applicable to the plaintiff's "claim"; the plaintiff had

settled his negligence claims with the defendant's solvent liability insurer for less than the policy limits; and, because the plaintiff was required to exhaust his rights under the liability policy, which he failed to do, he was barred from pursuing his action against the Fund.

On appeal, the *Bukema* court reversed the trial court, finding that because the Travelers policy explicitly excluded dram shop liability from coverage, that policy was not a " 'policy which may be applicable to the claim,' as would be required for the the non-duplication of recovery provision to bar plaintiff's dram shop claim against the Fund." *Bukema*, 284 Ill. App. 3d at 793. Specifically, the *Bukema* court stated:

> "[I]n this case, plaintiff's claim with Travelers was that defendant failed to protect its patrons from attack by others in the tavern, whereas his claim with the Fund is that defendant caused Miller [employed by the defendant] to become intoxicated and attack plaintiff. There is no 'other insurance policy which may be *applicable to [plaintiff's] claim'* that defendant caused Miller to become intoxicated and assault plaintiff. The Travelers policy specifically excludes such a claim from its coverage." (Emphasis added.) *Bukema*, 284 Ill. App. 3d at

16

1-05-0025

793.

Following the *Bukema* decision, in which the appellate court had rejected the Fund's argument that the term "claim" should be equated with the term "injury," section 546(a) was amended by Public Act 90-499, section 91, effective August 19, 1997, and the term "injury" was, *inter alia*, added. Specifically, that section was amended as follows:

> "An insured or claimant shall be required first to exhaust all coverage provided by any other insurance policy, *regardless of whether or not such other insurance policy was written by a member company, if the claim under such other policy arises from the same facts, injury, or loss that gave rise to the covered claim against the Fund*. The Fund's obligation under Section 537.2 shall be reduced by the amount recovered or recoverable, whichever is greater, under such other insurance policy. Where such other insurance policy provides uninsured or underinsured motorist coverage, the amount recoverable shall be deemed to be the full applicable limits of such coverage. To the extent that the Fund's obligation under Section 537.2 is reduced by application of this Section, the liability of the person

17

1-05-0025

insured by the insolvent insurer's policy for the claim shall be reduced in the same amount." (Emphasis added.) 215 ILCS 5/546(a) (West 2004).

Black's Law Dictionary defines "claim" as "[t]he aggregate of operative facts giving rise to a right enforceable by a court"; "[a] demand for money or property to which one asserts a right <an insurance claim> (Black's Law Dictionary 240 (7th ed. 1999)) and "an act that damages, harms, or hurts," "a demand for compensation, benefits, or payment (as one made *** under any insurance policy upon the happening of the contingency against which it is issued" (Webster's Third New International Dictionary 414 (1993)). "Arise" is defined as "[t]o originate; to stem (from)"; "[t]o result (from)." Black's Law Dictionary 102 (7th ed. 1999). "Fact" is defined as "[s]omething that actually exists." Black's Law Dictionary 610 (7th ed. 1999). "Injury" is defined as "an act that damages, harms, or hurts"; a violation of another's rights for which the law allows an action to recover damages or specific property or both"; and "appl[ies] to an act or result involving an impairment or destruction of *** health *** or loss of something of value." Webster's Third New International Dictionary 1164 (1993). "Loss" is defined as "the amount of an insured's financial detriment due to the occurrence of a stipulated contingent event (as *** injury, destruction, or damage) in such a manner as to charge the insurer with a liability under the terms of the

18

policy)."   Webster's  Third  New  International  Dictionary  1338 (1993).

In the case at bar, there is no dispute that upon Bryant's insurer, Valor, becoming insolvent after plaintiff had negotiated the $20,000 settlement with Valor, plaintiff had a "covered claim" against the Fund arising out of and within the coverage of Bryant's automobile liability policy issued by Valor.  However, pursuant to section 546(a) of the Act, plaintiff was required to exhaust all coverage provided by any other insurance policy where the claim under such other policy arose from the same facts, injury or loss that gave rise to his claim against the Fund.  The main issue before this court, therefore, is whether the health insurance policy benefits received by plaintiff from his solvent medical insurers fall within the meaning of "other insurance" as provided in amended section 546(a).  As stated above, plaintiff's position is that health insurance benefits do not, since a health insurance "claim" is not the same type of "claim" as automobile liability insurance.  The Fund's position is that health insurance benefits do fall within the meaning of "other insurance" because plaintiff's "claim" for same arose out of the same "injury" that was the basis of his "claim" against the Fund for which he received the health insurance benefits.

The 1997 amendment of section 546(a) excised the phrase, "applicable to the claim," regarding exhaustion of a claimant's

19

rights under any provision in any other insurance policy, which occurred after the *Bukema* decision, and added the words, regarding any other insurance policy, (1) "regardless of whether or not such other insurance policy was written by a member company," and (2) "if the claim under such other policy arises from the same facts, injury, or loss that gave rise to the covered claim against the Fund." We find it clear that the legislature, by excising the language, "applicable to the claim," intended to broaden the scope of the types of insurance that a claimant under the Act must utilize in exhausting his rights from solvent insurers before seeking recovery from the Fund and to limit the Fund's liability. We believe the addition of the words "regardless of whether a member company" was intended to broaden the solvent "other insurance" provision to other insurers than only an insurer who insures for the same kind of insurance as an insolvent insurer, which was how the preamended section 546(a) had been interpreted in *Bukema*. We also believe that this comports with the legislative intent to prevent the nonduplication of recoveries and to have claimants exhaust their rights by recovering from solvent insurers, rather than the Fund. Moreover, there would have been no reason for the legislature to amend section 546(a) if it had not intended a change to that section; otherwise, the additional words, "regardless of whether a member company" and "arises from the same facts, injury or loss that gave rise to the covered claim," would simply be superfluous and meaningless. The fact that the

legislature chose not to specify certain types of insurance companies were excepted, such as health insurance companies as plaintiff argues, is, contrary to plaintiff's argument, further indicative that health insurance companies, or other specific types, are not to be excepted, especially since the amendment occurred following the *Bukema* decision.  Section 546(a) simply does not impose any such restriction.   In fact, the legislature's addition of the words, "regardless of whether or not such insurance policy was written by a member company," which health insurance companies are not (215 ILCS 5/533(a) (West 2004)), supports our conclusion.

We therefore find that plaintiff's claim against the Fund to recover the $20,000 negotiated settlement he would have received from Valor was for the same "injury" he received as a result of the car accident, and that his claims under his medical insurance policies, for which he received $128,067.82 in medical benefits, arose from the same "injury."  In other words, plaintiff's injury arose out of (originated/stemmed from) the same facts (physically injured while a pedestrian by Bryant), injury (physical injury) or loss (incurrence of medical bills for the same injury) that gave rise to his $20,000 claim against the Fund.  Because plaintiff had recovered more than the $20,000 already, requiring the Fund to pay him an additional $20,000 would be a duplication of his recovery for the same injury, and counter to the legislature's intention that the Fund be a source of last resort and not an insurer of

21

other insurance companies.

Since there are no cases by an Illinois reviewing court addressing whether medical benefits received by a claimant, who seeks to recover from the Fund due to the insolvency of an insurer, are to be set off from the Fund's obligation, we may look to other jurisdictions. See *Pekin Insurance Co. v. Fidelity & Guaranty Insurance Co.*, 357 Ill. App. 3d 891, 898, 830 N.E.2d 10 (2005).

We find that *MacDougall,* a Virginia circuit court case in which the legislative history of the Virginia statute is similar to section 546(a) of our statute, supports our conclusion that health insurance benefits are to be set off. *MacDougall* involved a motor vehicle accident in which a number of people were killed. The plaintiffs filed a motion for declaratory judgment against the defendants, seeking to recover from the defendant Virginia Property and Casualty Guaranty Association (the Guaranty Association), which was named as a defendant as a result of the insolvency of two insurance companies. The Guaranty Association filed a counterclaim for declaratory relief. *MacDougall*, slip op. at 2.

The *MacDougall* plaintiffs sought a declaration that, *inter alia*, the Guaranty Association had no right to set off any amounts paid by health insurers to "anyone" on the bases that the Virginia Code (Va. Code Ann. §38.1-1600 *et seq.* (1986)) (the Virginia Code) specifically excluded health insurers from its scope and was limited to liability policy insurers of the same or similar type to the insolvent insurer. *MacDougall*, slip op at 3. The Guaranty

22

Association sought a declaration, *inter alia*, that any of the plaintiffs having a claim against an insurer under any provision in an insurance policy, other than a policy of an insolvent insurer, was required to first seek recovery under the policy covered by the solvent insurer and any health insurance benefits received by the plaintiffs for their treatment of injuries was to be set off from the Guaranty Association's obligation. *MacDougall*, slip op. at 4.

Under the Virginia Code, like Illinois' Act, a "covered claim" is defined as "[a]n unpaid claim *** submitted by a claimant, which arises out of and is within the coverage and is subject to the applicable limits of a policy covered by this chapter and issued by an insurer who has been declared to be an insolvent insurer." *MacDougall,* slip op. at 5. The *MacDougall* plaintiffs argued that covered claims could only be set off by recoveries on other covered claims, *i.e.,* "by payments received from insurers on a claim that 'arises out of and is within the coverage of a policy issued by an insolvent insurer.' " *MacDougall*, slip op. at 5. The plaintiffs maintained that "medpay" and "seat belt" claims, " ' although occasioned by the same accident, [were] not the "covered claim" that arises out of the occurrence and to which [one of the insolvent insurer's] policies would have applied.' " *MacDougall,* slip op. at 5.

The Guaranty Association argued that, under section 38.1-767(1) of the former Virginia Code (the exhaustion of remedies provision and the predecessor statute to section 38.2-1610(A)),

that it would not have been entitled to a setoff for medpay, seat belt coverage or first party insurance, since the predecessor statute provided:

> "Any person having a claim against an insurer under any provision in an insurance policy other than a policy of an insolvent insurer *which is also a covered claim*, shall be required to exhaust first his right under such policy. Any amount payable on a covered claim under this chapter shall be reduced by the amount of any recovery under such insurance policy." (Emphasis in original.) *MacDougall*, slip op. at 6.

The Guaranty Association pointed out, however, that the same was not true based on the 1986 revision of the exhaustion of remedies provision (revisions underlined and deletions in italics), which provided:

> "Any person having a claim against an insurer under any provision in an insurance policy, other than a policy of an insolvent insurer *which is also a covered claim* under which the claim is also covered, shall be required *to exhaust first his right* first seek recovery under *such* the policy covered by the insurer which is not insolvent. Any amount payable of

24

a covered claim under this chapter shall be reduced by the amount of any recovery under *such* <u>the</u> insurance policy." *MacDougall,* slip op. at 6.

The *MacDougall* court went on to clarify the revisions, stating that,

"[a]s presently enacted, the exhaustion of remedies provision requires the claimant to first seek recovery from a solvent insurer. Any 'amount payable [by the Guaranty Association] on a covered claim' is then reduced by the claimant's recovery from a solvent insurer. *The statute does not distinguish between claims that are 'within the coverage' provided by the insolvent insurer and ancillary claims. In short, there is no longer the restriction that covered claims are offset only by recoveries from solvent insurers on 'covered claims.' "*

(Emphasis added.) *MacDougall,* slip. op. at 6.

Accordingly, the court agreed with the Guaranty Association, concluding that the amount it was obligated to pay on the covered claim should be reduced by any amounts that the claimants had received under the medpay or seat belt provisions *of any insurance policies issued by their solvent insurers. MacDougall,* slip op. at

25

6.

The *MacDougall* court then considered whether the Guaranty Association's obligation should be reduced by health insurance benefits paid to the plaintiffs. The plaintiffs argued that the Virginia Code did not apply to health or disability insurance; rather, the Act applied only to property or casualty insurance benefits payable from the same loss.

In response, the Guaranty Association maintained that the section of the Virginia Code relied on by the plaintiffs in support of their argument only excluded health insurers from *membership* in the Guaranty Association; it did not limit the broad reach of the exhaustion of remedies provided in section 38.2-1610(A) of the Viginia Code. *MacDougall,* slip op. at 7. The Guaranty Association further argued that health insurance benefits are no different than benefits paid pursuant to medpay or seat belt coverage for purposes of the exhaustion of remedies provision of the Act, and that a claimant therefore " 'must first seek recovery' from *any* insurance from a solvent insurer." (Emphasis in original.) *MacDougall*, slip op. at 7.

The *MagDougall* court held that health insurance benefits "actually paid" to the plaintiffs were to be set off from covered claims made against the Guaranty Association. *MacDougall*, slip op. at 7-8. In rendering its decision, the *MacDougall* court relied on *Bogle Development Co., Inc. v. Buie*, 250 Va. 431, 463 S.E.2d 467

26

(1995).  In *Buie*, the plaintiff was injured on the job and received workers' compensation benefits from his employer's subsequently insolvent insurer, as well as some health insurance payments from his solvent health insurer.  *Buie*, 250 Va. at 433.  The Guaranty Association paid the plaintiff for his out-of-pocket medical expenses, but refused to reimburse him or his health insurer for his medical bills that were paid by his health insurer.  *Buie*, 250 Va. at 433.  The *Buie* court held that once the plaintiff had been reimbursed for his out-of-pocket medical expenses, he "had no right to seek compensation from the Guaranty Association for medical bills covered by his health insurance."  *Buie,* 250 Va. at 434.  See also *Sulkowski v. Pennsylvania Property & Casualty Insurance Guaranty Ass'n,* ___ Pa. ___, ___, 871 A.2d 227, 230-31 (2005) (Pennsylvania Guaranty Association was entitled to set off disability insurance benefits paid to a victim of medical malpractice, pursuant to a nonduplication of recovery provision, where the setoff was for the  same loss, *i.e.,* lost wages); *Shepard v. Washington Insurance Guaranty Ass'n*, 120 Wash. App. 263, 268, 84 P.3d 940 (2004) (the insolvent liability carrier's coverage applied to the same claims the plaintiff's underinsured motorist, personal injury protection and medical insurance covered and, therefore, the Guaranty Association was entitled to setoffs for these payments); *Strickler v. Desai*, 571 Pa. 621, 656-57, 813 A.2d 650, ___ (2002) (the Guaranty Association was entitled, pursuant to the nonduplication of recovery provision, to set off health insurer's

payment in a medical malpractice action).

We find several similarities between Illinois' section 546(a) of the Act and Virginia's section 38.2-1610(A) of its Code. First, prior to amendment of section 546(a) and the revision of section 38.1-767(1) of the Virginia Code, both had been interpreted as allowing a setoff only of claims against the Fund or Guaranty Association on recoveries from insolvent insurers providing insurance policies for the same type of claims, *e.g.*, claims made pursuant to a liability policy issued by a solvent insurer with a claim under a liability policy issued by an insolvent insurer. Second, after amendment and revision of the predecessor statutes, both statutes deleted and added language broadening the word "claim." With respect to section 546(a) of Illinois' Act, the language, "applicable to the claim," was deleted, and the following language was added: "regardless of whether or not such other insurance policy was written by a member company" and "if the claim under such other policy arises from the same facts, injury or loss that gave rise to the covered claim against the Fund." With respect to the Virginia statute, the language, "which is also a covered claim," was deleted and, substituted therefor with the language, "under which the claim is also covered," thereby deleting any requirement that a claim against a solvent insurer had to be a "covered claim" before it was required to be set off. Third, both statutes, while created to protect claimants or policyholders from loss as a result of insolvent insurers, also clearly require the

28

exhaustion of rights from solvent insurers and a setoff, where applicable, from the liability of the Fund and Guaranty Association.

We therefore find that the legislature never intended that the Fund step into the shoes of an insolvent insurer and make a claimant or policyholder "whole." In light of the changes in both statutes, it defies common sense and the very concepts of nonduplication of recovery and exhaustion of rights to state that the Illinois and Virginia legislatures intended claimants or policyholders of insolvent insurance companies to receive a double recovery for the same injury, *i.e.,* first, recovery from a solvent insurer for an injury covered by that insurer and, secondly, an additional recovery from the Fund or Guaranty Association for the policy limits on a policy issued by an insolvent insurer for coverage arising from the same injury. Additionally, plaintiff's claim against the Fund arose out of his claim for his physical injuries, for which his medical insurers paid him $128,067.82, and the $20,000 settlement was for those same physical injuries. Accordingly, we find that the trial court correctly determined that no genuine issue of material fact existed, and that the Fund was entitled to set off the health insurance benefits received by plaintiff in the amount of $128,067.82 from plaintiff's claim against the Fund for the $20,000 Valor policy limits, thereby resulting in the Fund owing no amount to plaintiff.

In light of our disposition above, it is unnecessary to

29

1-05-0025

address the remaining issues raised by plaintiff.  We briefly note only that, with respect to plaintiff's assertion that in order for a setoff to apply to the Fund's obligation, the "other insurance" benefits recovered by a plaintiff must have been in a judicial proceeding, plaintiff has failed to cite to any applicable case law supporting such a "rule."  See *Obert v. Saville*, 253 Ill. App. 3d 677, 682, 624 N.E.2d 928 (1993) ("Bare contentions in the absence of argument or citation of authority do not merit consideration on appeal and are deemed waived").  Moreover, in instances where a claimant seeking recovery from the Fund has settled for less than the policy limits issued by a subsequently insolvent insurer, Illinois courts have held that the Fund is entitled to set off the full amount of the policy limits that the claimant could have recovered from the policy.  With respect to plaintiff's hypotheticals about various unpaid future benefits, we find these hypotheticals to be irrelevant, since this case involved only the medical insurance benefits that were *actually paid* to plaintiff by solvent health insurers in the amount of $128,067.82 for the same injury involved in his claim against the Fund.  We similarly need not address plaintiff's arguments concerning disability insurance, the negotiated liens, or the covered claim exception in section 534.3(b)(v) of the Act, since plaintiff has failed to cite to any authority in support of his "arguments" and, again, the Fund's obligation was reduced by the $128,067.82 actually paid to plaintiff from his medical insurers.

CONCLUSION

For the reasons stated, we affirm the judgment of the circuit court of Cook County.

Affirmed.

GORDON and McBRIDE, JJ., concur.