NO. 4-06-0561          Filed 2/20/07

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| ALEXANDRA PHILLIPS, a Minor, by Her | ) | Appeal from |
| Mother and Next Friend, LORENA D. | ) | Circuit Court of |
| TRAVELL; and LORENA D. TRAVELL, | ) | Sangamon County |
| Individually, | ) | No. 05L149 |
|       Plaintiffs-Appellants, | ) | |
|       v. | ) | Honorable |
| SHAWN A. DODDS, | ) | Patrick W. Kelley, |
|       Defendant-Appellee. | ) | Judge Presiding. |

_____

JUSTICE APPLETON delivered the opinion of the court:

Lorena D. Travell sued Shawn A. Dodds for the cost of medical treatment for her niece, Alexandra Phillips, whom Dodds allegedly injured in a traffic accident. Travell claimed that at the time of the accident, she was in loco parentis to Phillips and that section 15(a)(1) of the Rights of Married Persons Act (750 ILCS 65/15(a)(1) (West 2004)), commonly called "the family expense statute," obliged her to pay the medical bills. Dodds moved for summary judgment on the ground that Travell was neither the parent nor the legal guardian of Phillips. The trial court granted the motion, and Travell appeals. We hold that if one accepts a child into one's household and stands in loco parentis to the child, the family expense statute obligates one to pay for medical treatment the child receives during the relationship. Therefore we reverse the summary judgment and remand this case for further proceedings.

## I. BACKGROUND

Dodds's attorney took the depositions of Phillips and Travell. Phillips testified she was bicycling across an intersection in Springfield on August 9, 2004, when a truck struck her, fracturing some discs in her spine. She was in the hospital for two days. At the time of the deposition, she was 18 and living with her boyfriend. But at the time of the accident, she was 17 and living with Travell, her aunt, who (Phillips believed) had obtained "legal custody" of her.

Travell testified that Phillips's mother was dead and no one had come forward as the father. In 2003, Phillips was living with a cousin in Dallas, and the cousin was preparing to move to Germany. The cousin "gave [Travell] a paper," which they signed and notarized, enabling Travell to bring Phillips to Springfield. (This "paper" does not appear to be in the record.) Travell thereby acquired what she considered to be "legal custody" of Phillips, who lived with her for the next two years, until they moved to Springfield.

Travell considered herself responsible for Phillips's medical bills. She testified: "After the accident[,] all the bills came to me[,] and then they said I was responsible ***. *** [W]hen I got to the hospital[,] they had already processed her admission paper, and they didn't ask me anything, and then the bills started coming." The medical bills in the record are

- 2 -

addressed to Travell. She had not paid any of them yet. She had bought pain medication, however, because Phillips "had to have that."

## II. ANALYSIS

### A. The Purpose of the Family Expense Statute

The family expense statute provides as follows: "The expenses of the family and of the education of the children shall be chargeable upon the property of both husband and wife, or of either of them, in favor of creditors therefor, and in relation thereto[,] they may be sued jointly or separately." 750 ILCS 65/15(a)(1) (West 2004).

When construing a statute, we may consider "the reason and necessity for the statute and the evils [the legislature] intended to remedy." Roth v. Illinois Insurance Guaranty Fund, 366 Ill. App. 3d 787, 794, 852 N.E.2d 289, 294 (2006). The legislature passed the family expense statute as a section in the Husband and Wife Act of 1874 (Ill. Rev. Stat. 1874, ch. 68, par. 15) (Lyman v. Harbaugh, 117 Ill. App. 3d 732, 733, 453 N.E.2d 906, 907 (1983)), copying a similar statute in Iowa (Iowa Code §2214 (1873), now Iowa Code §597.14 (2006)) (Louis Berman & Co. v. Dahlberg, 336 Ill. App. 233, 236, 83 N.E.2d 380, 382 (1948)). At common law, the wife could bind the husband for "necessaries" only if he gave her express authority to do so or only if the law

implied such authority from the husband's "neglect to furnish articles suitable to her station in life, which said articles were considered and treated in law as necessaries." Arnold v. Keil, 81 Ill. App. 237, 242 (1898). This rule hindered commerce and the extension of credit. In the 1870s, most married women had no source of income other than their husbands. Therefore, selling goods to a married woman on credit could be risky. The merchant had to ask himself two questions: (1) does this woman have authority from her husband to make the purchase, and (2) is the item that she proposes to buy a "necessary"? The family expense statute eliminated the first question altogether and changed the second question into "whether the expenditure was incurred for, on account of, and to be used in the family." Louis Berman & Co., 336 Ill. App. at 236, 83 N.E.2d at 382. Family expenses, so defined, were a broader category than "necessaries."

As the Supreme Court of Iowa explained, this change in the law helped the wife, husband, and creditor:

"The statute was enacted for the benefit of the husband or wife, and person from whom the things constituting the family expenses were obtained, to the end that credit could be obtained and extended for something essential, necessary, or convenient, or so deemed

- 4 -

by the husband or wife, to be used in or by

the family."  Davis v. Ritchey, 55 Iowa 719,

721, 8 N.W. 669, 670 (1881).

By interpreting the family expense statute to apply to persons who, under the common law, stand in loco parentis, we would remove an obstacle to commerce and lessen the financial risk of providing medical care to the child, thereby benefitting the child, the creditor, and the persons in loco parentis (who, presumably, intend to provide for the child).  Such an interpretation would tend to effectuate the legislative intent of making adults liable for family expenses if they hold themselves and the child out as one family.  See Chicago Manual Training School Ass'n v. Scott, 159 Ill. App. 350, 355 (1911).

### B. The Legislature's Presumed Awareness of the Concept of "in Loco Parentis"

"'Where statutes are enacted after judicial opinions are published, it must be presumed that the legislature acted with knowledge of the prevailing case law.'"  Cargill v. Czelatdko, 353 Ill. App. 3d 654, 658, 818 N.E.2d 898, 903 (2004), quoting People v. Hickman, 163 Ill. 2d 250, 262, 644 N.E.2d 1147, 1153 (1994).  We presume that when the legislature passed the family expense statute, it was aware of Mowbry v. Mowbry, 64 Ill. 383 (1872), decided only two years earlier, and Brush v. Blanchard, 18 Ill. 46 (1856).  In those two cases, the supreme court recognized that one could admit a child into one's family,

treat the child as a member of the family, and voluntarily assume the relation of parent to that child.  Mowbry, 64 Ill. at 387; Brush, 18 Ill. at 47.  By choosing to be in loco parentis to a child, one "[stood] in the place of natural parent, and the reciprocal rights, obligations[,] and duties of parent and child attach and continue[] so long as this mutually assumed relation continues."  Brush, 18 Ill. at 47; see also Faber v. Industrial Comm'n, 352 Ill. 115, 120, 185 N.E. 255, 257 (1933) (same).  Thus, when using the phrase "[t]he expenses of the family" in 1874, the legislature must have known that, under prevailing decisions of the supreme court, one could create a family--with "reciprocal rights, obligations[,] and duties"--by standing in loco parentis to a child.

### C. The Applicability of the Family Expense Statute Outside the Marital Relationship

By its terms, the family expense statute makes a "husband and wife" jointly and severally liable for family expenses.  750 ILCS 65/15(a)(1) (West 2004).  The record appears to contain no evidence that Travell is married.  Courts, however, interpret the family expense statute as requiring parents to pay their children's medical and educational expenses regardless of whether the parents are married.  Mercy Center for Health Care Services v. Lemke, 199 Ill. App. 3d 958, 963-64, 557 N.E.2d 943, 946 (1990); Proctor Hospital v. Taylor, 279 Ill. App. 3d 624, 625, 665 N.E.2d 872, 874 (1996); In re Marriage of Bennett, 306

Ill. App. 3d 246, 248, 713 N.E.2d 1278, 1280 (1999).  Thus, being unmarried would not remove Travell from the purview of the family expense statute.

### D. Travell's Status as a Person in Loco Parentis

Dodds disputes that Travell was in loco parentis to Phillips.  According to Dodds, Travell has produced no evidence that she "[took] on the obligations of a parent" or "assumed the financial burdens arising out of the relationship of a parent and child."  We note that in his motion for summary judgment, Dodds never disputed Travell's status as a person in loco parentis; he merely argued that because Travell was a nonparent who lacked legal custody, Travell could not recover the expenses of Phillips's medical treatment.  In any event, looking at the evidence in a light most favorable to Travell and drawing all reasonable inferences in her favor, we find a genuine issue of fact as to whether Travell stood in loco parentis to Phillips.  See Moore v. Kickapoo Fire Protection District, 210 Ill. App. 3d 736, 738, 569 N.E.2d 214, 215 (1991).  The significance of the notarized "paper" from Phillips's cousin depends not on its legal efficacy but on what it reveals about Travell's intent.  Regardless of whether the document was legally valid, Travell testified that she accepted the document in the belief that it was legally valid and with the intent of assuming custody of Phillips.  In Phillips's mind, Travell was her legal custodian.  Travell is not

- 7 -

like the grandmother in <u>Busillo v. Hetzel</u>, 58 Ill. App. 3d 682, 684, 374 N.E.2d 1090, 1091 (1978), who "had custody for only a few days during the daylight hours." Phillips lived with Travell for two years, and we infer that Travell supported her during those two years, since supporting a child usually goes with having custody. Most tellingly, Travell considers herself liable for the expense of Phillips's medical treatment.

E. The Duty of a Person <u>in</u> <u>Loco</u> <u>Parentis</u> To Furnish
Medical Care for the Child

The family expense statute makes parents liable for the medical expenses of their minor children. <u>Graul v. Adrian</u>, 32 Ill. 2d 345, 347, 205 N.E.2d 444, 446 (1965). The common law in turn gives the parents a cause of action against the tortfeasor who, by injuring the child, caused the parents to incur the medical expenses. <u>Worley v. Barger</u>, 347 Ill. App. 3d 492, 495, 807 N.E.2d 1222, 1225 (2004), <u>appeal</u> <u>denied</u>, 211 Ill. 2d 618, 823 N.E.2d 980 (2004). Section 703(b) of the Restatement (Second) of Torts provides as follows:

> "'One who by reason of his tortious conduct
> is liable to a minor child for illness or
> other bodily harm is subject to liability to
>
>    ***
>
> (b) the parent who is under a legal duty
> to furnish medical treatment for any expenses
> reasonably incurred or likely to be incurred

- 8 -

for the treatment during the child's minority.'" Worley, 347 Ill. App. 3d at 496, 807 N.E.2d at 1226, quoting Restatement (Second) of Torts §703(b), at 510 (1977).

Dodds is liable to Travell only if Travell had a duty to provide medical care to Phillips. "Custodial parents have an affirmative duty to protect and provide for their minor children" (People v. Peters, 224 Ill. App. 3d 180, 190, 586 N.E.2d 469, 476 (1991)), and when one "stands in the place of natural parent" (in loco parentis), "the reciprocal rights, obligations[,] and duties of parent and child attach and continue[] so long as this mutually assumed relation continues" (Brush, 18 Ill. at 47; see also Faber, 352 Ill. at 120, 185 N.E. at 257). From this unqualified statement in Brush and Faber, we conclude that as long as the mutually assumed relationship continues, a person in loco parentis has the same duty to provide medical care for the child as the child's natural parents would have. The relationship is reciprocal: the child has a duty to render the services that a child would normally render to a parent, such as by helping out around the farm (Brush, 18 Ill. at 47), and the person in loco parentis has a duty to provide for the child as if the child were his or her own (Mowbry, 64 Ill. at 387).

In Scott, 159 Ill. App. at 351, for instance, the defendant had a stepson, Edward, who for some four years had

- 9 -

lived in his household. Edward's mother, Vivian, sent him to a vocational school at his natural father's expense, but when the father died, the tuition went unpaid, and the school sued the defendant for the arrears. Scott, 159 Ill. App. at 351-52. The defendant denied he was liable. See Brush, 18 Ill. at 47 ("The husband is not, from the fact of marriage with the mother of minor children, bound to support them"). The appellate court held that "if a man took the children of his wife by a former marriage into his family, he did then stand in loco parentis as to them[] and was bound by his wife's contracts made for their maintenance and education." (Emphasis in original.) Scott, 159 Ill. App. at 354. The defendant could have refused to take Edward into his family (see Brush, 18 Ill. at 47); or, after taking Edward into his family, the defendant could have terminated the relationship between himself and Edward by announcing that from henceforth, he would support Edward no longer (see Brush, 18 Ill. at 47 (the obligation exists "so long as this mutually assumed relation continues")). But the defendant could not retroactively terminate the relationship by repudiating an expense incurred while the relationship was still in effect--that is, while the defendant was still holding out Edward, Vivian, and himself as one family. Scott, 159 Ill. at 355.

In the present case (looking at the evidence in a light most favorable to Travell and resolving all reasonable inferences

in her favor), the hospital rendered services to Phillips at a time when Travell was holding herself and Phillips out as a family.  Travell could have refused to take Phillips into her household in the first place, or she could have decided, at some point, that she no longer wished to stand in loco parentis to Phillips.  Travell could not retroactively terminate the relationship, however, to evade liability for medical expenses already incurred.  Having voluntarily assumed the role of parent, Travell had "a legal duty to furnish medical treatment" for Phillips, and she had a corresponding cause of action against Dodds for the cost of the treatment.  See Restatement (Second) of Torts §703(b), at 510 (1977).  Travell could not enjoy the benefits of parenthood without shouldering the expense.

### III. CONCLUSION

For the foregoing reasons, we reverse the trial court's judgment and remand this case for further proceedings.

Reversed and remanded.

KNECHT, J., concurs.

TURNER, J., specially concurs.


JUSTICE TURNER, specially concurring:

Although I concur with the conclusion reached by the majority, I write separately because the majority opinion appears to conclude Travell did stand in loco parentis to Phillips.

- 11 -

However, this case comes to us at the summary-judgment stage, and as our supreme court recently pronounced, "[t]he purpose of summary judgment is not to try a question of fact, but rather to determine whether a genuine question of material fact exists" (Bagent v. Blessing Care Corp., No. 102430, slip op. at 6 (January 19, 2007). Thus, our analysis in section D should have ended when we found "a genuine issue of fact as to whether Travell stood in loco parentis to Phillips." Slip op. at 7.

Also, the majority opinion need not cite and should not have cited the Scott case, a 1911 appellate court opinion. See slip op. at 5, 9. First, appellate court decisions issued before 1935 are not binding authority. Bryson v. News America Publications, Inc., 174 Ill. 2d 77, 95, 672 N.E.2d 1207, 1217 (1996); see also Young v. Bryco Arms, 213 Ill. 2d 433, 451-52, 821 N.E.2d 1078, 1089 (2004). Second, due to its age, the case has limited applicability today given the development of family law since it was rendered and the current complexity of family law. Last, regardless of age, the Scott court's general statements regarding a stepfather's obligation to support a stepchild lend little to our analysis of the facts before us.